IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA


UNITED STATES OF AMERICA,      )
      )
          Plaintiff,      )
      )
vs.      )    NO. CR-07-70-T
      )
MICHAEL DEAN HELTON,      )
      )
          Defendant.      )


## FINDINGS AND CONCLUSIONS AND JUDGMENT

I. Background:

Defendant Michael Dean Helton is charged by Indictment with one count of producing child pornography in violation of 18 U. S. C. § 2251(a), a charge to which he entered a plea of not guilty. Specifically, the Indictment charges that defendant "used a minor girl to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct and the visual depiction was produced using materials that had been mailed, shipped, and transported in interstate or foreign commerce, in that, the defendant secreted a video camera in a bathroom and video-taped an ll-year old girl in a manner depicting a lascivious exhibition of the genitals and pubic area of the girl."

Pursuant to Fed. R. Crim. P. 23( a), the parties jointly requested a non-jury trial. As required by the rule, defendant filed a written waiver [Doc. No. 17] of his right to a jury trial, and the government consented. Upon a hearing, the court concluded that defendant's waiver was freely, knowingly, and intelligently made, and approved his request for a non-jury trial.  On May 31, 2007 the matter was tried to the court. Prior to the trial, the parties filed  stipulations [Doc. No. 20] with respect to certain facts and the admissibility of several exhibits; the original signed stipulations were admitted at trial as Government Exhibit 3. Pursuant to the parties' stipulations, two DVC tapes,

labeled as Government Exhibits 1 and 2, were introduced.  As stipulated by the parties and more specifically described herein, Government Exhibit 1 contains the depiction on which the crime charged in the Indictment is based. Government Exhibit 2, according to the parties' stipulations, is a tape made by defendant in the bathroom of a Borger, Texas  residence, and is more specifically described herein. The parties have also stipulated that Government Exhibit 1A is an excerpt of Exhibit 1, and that it contains the specific depiction charged in the Indictment; Government Exhibit 2A, according to the parties' stipulations, is an excerpt of Exhibit 2.  According to the specific stipulations, recited below, defendant stipulated to the admissibility of these exhibits.

In addition to these exhibits, the court also admitted at trial Government Exhibits 4 through 9, without objection from defendant. The court also heard at trial the testimony of one witness, Federal Bureau of Investigation ("FBI") Special Agent Kurt M. Stoner, who testified that Exhibits 4 through 9 are materials recovered in a January 18, 2007 search of defendant's Oklahoma City residence and two automobiles; the search was conducted pursuant to a warrant obtained by the Oklahoma City police.  Agent Stoner was the only witness testifying during the trial.

II.  The parties' stipulations:

The parties have stipulated to the following, as set forth in Exhibit 3:

1.  The defendant, Michael D. Helton, resided in Oklahoma City, Oklahoma, during the time period from September of 2005 to January of 2007.

2. On or about January 3, 2007, Stephen Helton, defendant's brother, and Stephen's wife Kathy, found a Panasonic camcorder and two Panasonic DVC tapes, admitted as Government's Exhibits 1 and 2, in the defendant's bedroom at his residence. After viewing the tapes, Stephen and Kathy Helton contacted police and turned the tapes over to police.

3.   M.H. And her daughter, B.M., who was born on December 8, 1993, stayed with the defendant at his residence in Oklahoma City from September of 2005 through November of 2005. The defendant knew that B.M. was under 18 years of age.

4. Government Exhibit 1 is approximately one and one-half hours in length.   Portions of the tape are blank. Portions of the tape depict a group of adults who appear to be sitting around a kitchen table talking. A segment approximately two and one-half minutes long depicts a minor girl in a bathroom. If called to testify, M.H. would testify that she viewed the DVC tape, Government Exhibit 1, and identified the girl depicted as her daughter, B.M.  M.H. also recognized the bathroom shown in the tape as that of the defendant at his residence in Oklahoma City.  Neither M.H. nor B.M. were aware they were being recorded. Government Exhibit 1 contains the depiction charged in the Indictment.

5. D.A.G., a woman with whom the defendant had a prior relationship, lives in Borger, Texas. She has two daughters, J.J., whose date of birth is June 7, 1991, and M.G., whose date of birth is April 8, 1998. The defendant stayed at D.A.G.'s residence in the Fall of 2005.  If D.A.G. were called to testify, she would testify she viewed the DVC tape marked as Government's Exhibit 2 and identified herself, J.J., and M.G. on the tape.  She further would testify that she identified the bathroom shown in the tape as the bathroom at her residence.  She was not aware that the recording was being made in her bathroom.

6. The defendant placed the Panasonic camcorder in the two bathrooms identified in paragraphs 4 and 5 during the Fall of 2005.

7. The Panasonic camcorder and DVC tapes were manufactured outside the State of Oklahoma. These items, therefore, traveled in interstate commerce.

8. The government and defendant stipulate that: the DVC tape marked as Government's Exhibit 1 is a copy of the DVC tape recording found in defendant's bedroom in January of 2007. Government's Exhibit lA is an excerpt of Exhibit 1 showing only the defendant and the minor female, B.M., who appear at different times on Exhibit lA. Both are true and accurate copies of tapes that the defendant produced and are admissible in evidence. The DVC tape marked as Government Exhibit 2 is a copy of a second DVC tape recording found in defendant's bedroom in January of 2007 and is approximately one and one-half hours in length. Government's Exhibit 2A is an excerpt showing only the defendant and later the minor females, J.J. and M.G., who appear at different times on Exhibit 2A.  Both are true and accurate copies of tapes that the defendant produced and are admissible in evidence.

II. Additional findings of fact:

In addition to the above facts to which the parties have stipulated, the court finds that the evidence establishes the following:

1. At the request of Oklahoma City police, Agent Stoner participated in the search of defendant's residence on January 18, 2007.  The Oklahoma City police obtained a search warrant after Stephen and Kathy Helton gave the police the two tapes they found. According to his testimony, Agent Stoner has been assigned to the FBI's computer crime squad for approximately eight years, and his sole responsibility is the investigation of sexual exploitation crimes related to the internet or child pornography.  He was contacted by the police to assist in the execution of the search warrant.  The search included defendant's trailer home and a pickup truck and semi-tractor truck which were parked at the residence.  Defendant was present when the officers arrived; he was arrested and removed from the scene.

4

2. During the search, approximately 247 items were found in the residence or the vehicles. Among these are Government Exhibit 4, which Agent Stoner testified is a magazine, found under the bathroom sink, entitled "Panty Play."  The cover of Exhibit 4 shows a female lifting her skirt to show her underpants; she is photographed from a lower level so that the camera angles up toward her underpants. The cover of Exhibit 4 also includes phrases summarizing its contents as including "peeping Tom special,"  "undie video review," and "celebrity party pics: Courtney Love." According to Agent Stoner, a total of five "Panty Play" magazines were found during the search.

3. Also obtained during the search were DVD jackets or containers which were admitted as Government Exhibits 5 through 7. Government Exhibit 5 is entitled "Real Hidden Panties 6;" Exhibit 6 is entitled "Real Hidden Panties 7;" and Exhibit 7 is entitled "Real Hidden Panties 8." Each cover depicts several views of females photographed from a lower level so that their underpants are displayed under their clothing; the covers also advertise the contents of the DVD's as taken by "hidden cameras," and Exhibit 5 states in part, "Our hidden cameras sneak in all the places you ever dreamed of going" to "get a glimpse of beautiful females' undies!"

4. Agent Stoner also testified that Government Exhibits 8 and 9 are photocopied pages found in defendant's pickup truck; a total of 156 photocopy pages were found during the search, and each showed female adults or children in their underwear and focused on the genital or pubic area.

5. In addition, Agent Stoner testified, a DVD entitled "Perverted Peep Show" was found in defendant's DVD player at his residence.

6. Government Exhibit 1 A is an approximately 2 to 3 minute excerpt of the 90-minute tape introduced  as Government Exhibit 1. Exhibit 1 shows the defendant first placing the camcorder in the  bathroom of his residence at the approximate level of his head; he later is shown retrieving the camcorder  and placing it at the floor level directly across from the toilet. Defendant's face and

upper torso are clearly identifiable, and he is shown carefully placing the camera in a position to angle upward toward the toilet in the bathroom; he positions the camera and places tissue paper around it in a manner to secure its position. According to the parties' stipulations, the bathroom is that of the defendant's residence in Oklahoma City, and the video was found by defendant's brother and his wife, and turned over to the police.

7.  Government Exhibit lA, an excerpt of Exhibit 1, also depicts a young female seated on the toilet and facing the camera which is located below her; a portion of an adult female's body is seen in the video.  According to the parties' stipulations, the young female is B.M., who was eleven years old at the  time the video was made; the adult shown is her mother, M.H.  Exhibit 1A initially shows B.M.  seated facing the hidden camera, so that her face and upper torso are visible; she is wearing a bra.  She then stands and pulls up her underpants. Her underpants, including the pubic area, are the center of the focused area; a portion of her bare midriff and upper legs is visible, but the underpants and pubic area are predominant and comprise the primary image of the frame for approximately one and one-half to two minutes. The girl then pulls on shorts, and walks away from the camera's view.

8.  Government Exhibit 2 is approximately 90 minutes long. It also shows defendant's face clearly, and he is shown placing the camcorder in a waste basket, spending more than one minute arranging the camera so that it captures images from floor level pointing upward. A subsequent portion of the video shows him again entering the bathroom and rearranging the camcorder in the wastebasket, adding paper around it and adjusting it in what appears to be a specific manner, as he continues to adjust it several times. This video, which the parties stipulate was made at the residence in Borger, Texas, shows that the placement of the wastebasket is beside the toilet seat instead of directly across from it. However, the camcorder is again pointing upward toward the

toilet. Among the depictions shown in Exhibit 2 and the excerpt introduced as Exhibit 2A is that of M.G., daughter of D.A. G., who was approximately 6 to 7 years old; she is seen entering the bathroom and sitting on the toilet. Her pubic area and genitals are not exposed.

9.  Also depicted in Exhibits 2 and 2A are images of J.J., who was 14 years old at the time the videotape was made. The video depicts her placing clothing on the toilet seat; as a result, her genitals or pubic area are not displayed. Instead, her breasts and buttocks are displayed while she is undressing for a shower.

10.  According to the parties' stipulations, defendant taped Exhibits 1 and 2 in the Fall of 2005.  The evidence shows that he kept them in his possession for more than one year. The camcorder and the two videotapes were kept in the bedroom of his residence.

IV.  Conclusions of Law:

1.  Defendant is charged with a violation of 18 U. S. C. § 2251(a), which provides:

**§ 2251. Sexual exploitation of children**

(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

2. Although the statute includes several types of conduct which, if proven, form the basis for a crime, defendant in this case is charged only with using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; the specific charge is that

he secreted a video camera in a bathroom and video-taped an ll-year-old girl "in a manner depicting a lascivious exhibition of the genitals and pubic area of the girl."

3. To satisfy its burden of proof, the government must prove: a) that the defendant used a minor to engage in any sexually explicit conduct, b) that the defendant's purpose was to produce a visual depiction of the minor engaged in sexually explicit conduct, and c) that the visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means. United States v. Esch, 832 F.2d 531, 536 (10th Cir. 1987).

4. Because the defendant has stipulated that the Panasonic camcorder and the DVC tapes in this case were manufactured outside the State of Oklahoma and traveled in interstate commerce, see Stipulation No.7, the third element of proof is satisfied.

5. With respect to the first and second elements of proof, the defendant has also stipulated that the female subject of the tape charged in the Indictment and admitted as Exhibit lA was a minor at the time of the taping and that defendant knew she was a minor. Stipulation No.3.

6. The evidence also establishes that the government has satisfied its burden of proof that defendant "used" the minor for the purpose of producing a visual depiction of the minor. To "use" as required by the statute means "to convert to one's service," "to employ," "to avail oneself of," and "to carry out a purpose or action by means of."  United States v. Sirois, 87 F .3d 34, 41 (2d Cir. 1996), *cert. denied*, 519 U.S. 942 (1996), *citing* Bailey v. United States, 516 U.S. 137 (1995) (defining "use" in the context of statutory prohibitions regarding use of a firearm). According to the Second Circuit in Sirois, use "is fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography." *Id*. The stipulations and additional facts shown by the evidence establish that defendant "availed himself of" a minor or "carried out a purpose or action by means of" by carefully positioning a hidden camcorder in a bathroom in a

manner that was designed to, and did, result in visual depictions of the resident females, including the minor female, in a manner that depicted the pubic or genital area.

7. The parties agree that the critical issue is whether the government has met its burden of proving that the resulting depiction shown on Exhibits 1, and, specifically, 1A, constitutes "sexually explicit conduct" as required by the statute.  Section 2251 ( a) was enacted as a part of the Protection of Children Against Sexual Exploitation Act of 1977 (the "Act"), and the Act contains definitions of terms contained in § 2251(a) and other provisions, including a definition of "sexually explicit conduct" under § 2251(a). "Sexually explicit conduct" is defined[1] as a " lascivious exhibition of the genitals or pubic area of any person." 18 U. S. C. § 2256 (2)(A)(v).

8. The Act does not define "lascivious exhibition of the genitals or pubic area."  However, nudity is not required to find a lascivious exhibition of the genitals or pubic area.   United States v. Knox, 32 F.3d 733,736-37 (3d Cir. 1994), *cert. denied*, 513 U.S. 1109 (1994).  *See also* United States v. Grimes, 244 F.3d 375,380-81 (5th Cir. 2001); United States v. Boudreau, 250 F.3d 279,283 (5th Cir. 2001); United States v . Horn, 187 F.3d 781,789-90 (8th Cir. 1999).

9.  In determining whether an item depicts a lascivious exhibition of the genitals or pubic area, the Tenth Circuit and other circuits have applied the test formulated in United States v . Dost, 636 F. Supp. 828 (S. D. Cal. 1986), *aff'd sub nom*., United States v. Wiegand, 812 F.2d 1239 (9th Cir. 1987), *cert. denied*, 484 U.S. 856 (1987).  Consideration of the factors is not mandatory in all cases; however, "the Dost factors provide specific sensible meaning to the term 'lascivious,' a term which is less than crystal clear ." Wolf, 890 F .2d at 245, quoting United States v. Villard, 885 F.2d 117, 122 (3d  Cir. 1989).   The undersigned agrees, and notes that both the government and

---

[1]*The Act also includes other conduct in its definition of sexually explicit conduct; however, no other conduct is charged in this case.*

defendant cite and discuss the <u>Dost</u> factors as the appropriate test to apply in this case.

Accordingly, the following factors are considered in light of the evidence:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

<u>Dost</u>, 636 F. Supp. at 832.  All six factors need not be present. <u>Wolf</u>, 890 F.2d at 245.  Furthermore, it is not necessary to find more than one factor.  *Id.,* n. 6.

10. Defendant contends that consideration of the <u>Dost</u> factors, while the proper test, is not required until the court first addresses the threshold question of whether there is an exhibition of the pubic or genital area. Only if such exhibition exists, defendant contends, must the court consider the factors. Based on the evidence, the court concludes that Exhibit 1A exhibits the minor child's pubic area which, although clothed in underpants, is the focus and subject of approximately one and one-half minutes to two minutes of the approximately three-minute segment of the video.  Accordingly, the court will consider t he application of the <u>Dost</u> factors to determine whether that exhibition is lascivious.

11. With respect to the first <u>Dost</u> factor regarding the focal point of the depiction in Exhibit lA, the evidence shows that the focal point of the visual depiction is the minor child's pubic area.  Although the minor is wearing underpants and is not nude, nudity is not required. *See* <u>Knox</u>,

32 F.3d at 736-37.   Approximately one and one-half minutes to two minutes of Exhibit 1A consists of the  image of the minor girl's pubic  area, clothed in underpants, as the focal point at  the center of the  image on the screen. Although her stomach and the upper portion of her legs are also visible to the  viewer, the resulting image focuses on the pubic area.  Moreover, the evidence shows that the camcorder was positioned in a manner designed to capture visual images of the genital or pubic area; its placement at the floor level with the lens pointing upward and toward the toilet seat results in a focus on those portions of the body of anyone entering  the bathroom and sitting on the toilet. Thus, the evidence establishes that the first <u>Dost</u> factor is  present.

12. With respect to the second factor as applied to Exhibit 1 A, the government conceded at trial that a bathroom is not necessarily a sexually suggestive location. However, as the government argues, defendant's placement of the camcorder immediately opposite the toilet seat at a level and angle insuring that the resulting video would be aimed at the pubic and genital areas of anyone sitting on the toilet makes the setting, as organized by defendant,  sexually suggestive. Although this factor does not weigh  heavily against defendant, the overall circumstances shown by the evidence cause it to be afforded some weight.

13. The third <u>Dost</u>  factor, as the government concedes, is not present in Exhibit 1A because the minor female is not portrayed in an unnatural pose or in inappropriate attire for a child of age 11.

14. With respect to the fourth factor, whether the minor is clothed or nude, it is apparent that the minor child in Exhibit  lA is wearing a bra and underpants at the time she is shown on the video. There is one point, when she stands up to pull up her underpants, in which  the video arguably shows a portion of her unclothed pubic area. However, that image is brief; the primary image is on her underpants, with a focus on her clothed pubic area. Thus, this factor does not weigh significantly in favor of the government.

15. The fifth factor in <u>Dost</u> is not present, as the government concedes, because there is no display of sexual coyness or willingness to engage in sexual activity shown by the minor female. Instead, she is engaged in a conversation with her mother for the majority of the video image.

16. The proper analysis of the sixth factor, "whether the visual depiction is intended or designed to elicit a sexual response in the viewer," is disputed by the parties. According to the government, this factor should be subjective, and thus the question is whether the visual depiction is intended or designed to elicit a sexual response in defendant or like-minded individuals. Defendant argues that the factor must be considered objectively by determining whether the depiction is intended or designed to elicit a sexual response in a reasonable person viewing the image. The court has reviewed the Tenth Circuit's decision in <u>Wolf</u> and decisions of other circuits cited by the parties. Recognizing that neither this circuit nor others have expressly held that the sixth <u>Dost</u> factor must be analyzed from an objective or subjective view, the undersigned concludes that this circuit's decision in <u>Dost</u> and the decisions cited therein support a subjective analysis, and that such analysis best serves the statutory purpose of prohibiting the sexual exploitation of children.

a. In <u>Wolf</u>, this circuit reviewed the decisions of other circuits and concluded that "lasciviousness is not a characteristic of the child photographed but of the exhibition that the photographer sets up for an audience that consists of himself or likeminded individuals." 890 F .2d at 247.

b. In reaching that conclusion, the <u>Wolf</u> court cited with approval the Ninth Circuit's decision in <u>United States v. Wiegand</u>, 812 F.2d 1239 (9th Cir.), *cert. denied*, 484 U.S. 856 (1987). In <u>Wiegand</u>, the court expressly rejected the argument that a "lascivious exhibition" requires that the child photographed display lust, finding that the photograph in question "was a lascivious

12

exhibition because the photographer arrayed it to suit his particular lust," adding that "Each of the pictures featured the child photographed as a sexual object." 812 F.2d at 1244. In the context of the statute, the court held, "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles...so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur." *Id.*

17. In <u>United States v. Villard</u>, 885 F.2d 117 (3d Cir. 1989), as defendant's counsel points out, the court observed that "the sixth <u>Dost</u> factor, rather than being a separate substantive inquiry about the photographs, is useful as another way of inquiring into whether any of the other five <u>Dost</u> factors are met." 885 F.2d at 125.   In <u>Villard</u>, the court concluded that it should not find the photographs at issue lascivious "merely because [defendant] found them sexually arousing." *Id*. However, court also stated that, "Although it is tempting to judge the <u>actual</u> effect on the viewer, we must focus instead on the <u>intended</u> effect on the viewer." 885 F.2d at 125 (emphasis in the original).

18. The court also notes that the purpose of § 2251(a) is to prohibit the "sexual exploitation of children."  Thus, as the court noted in <u>Wiegand</u>, the analysis must be considered in light of that purpose. In this case, the defendant secreted a camcorder and positioned it at the floor level of a bathroom, across from a toilet seat, with the lens pointing upward, in a manner that would capture images of female genitalia or pubic areas; he did so knowing that a minor female resided in the home.

19. The evidence reflects that defendant possessed DVD's, magazines, and photographs of adult and minor females depicted in their underwear as well as in the nude, focusing on the pubic or genital area, and that the subject matter of these materials displayed an extreme interest in visual

depictions of female underpants, in particular, genitalia and pubic areas.  Exhibits 4 through 9 show a particular interest in visual images obtained via hidden cameras. The evidence further shows that Exhibits  1A and 2A are depictions derived from a camera hidden in such a way that the female underpants, including the pubic or genital area, would be displayed. Although defendant is not c charged with a crime based on Exhibit 2 or Exhibit 2A, these depictions, as well as Exhibits 4 through 9, show his knowledge, state of mind, intent, preparation or plan with respect to obtaining the visual images of female pubic or genital areas either clothed in underpants or nude, especially those resulting from hidden cameras[2].

20. Furthermore, the court notes that the evidence shows that approximately 247 items obtained in the search of defendant's residence establish defendant's preoccupation with visual images, primarily taken with hidden cameras, of female adult and child underpants, with such images focusing on the genital or pubic area of the females depicted.  Exhibits 5 through 9 reflect that such DVD's and/or magazines are marketed to a segment of the public who  apparently share defendant's interest in such depictions and are thus "likeminded individuals."  *See* Wolf, 890 F.2d at 247.

21. Considering the content of Exhibit 1A as well as the evidence as a whole, the court concludes that the sixth Dost factor is present; the visual depiction in Exhibit 1A was "intended or designed to elicit a sexual response in the viewer," as it was planned and set up for an audience consisting of defendant and  likeminded individuals. *Id.*;  Wiegand, 812 F.2d at 1244.

---

[2]*Although defendant did not object to the admission of Exhibits 2, 2A or 4 through 9 on the basis of Fed. R. Evid. 404(b) as impermissible evidence admitted to prove prior acts to show that defendant acted in conformity therewith, the court concludes that these exhibits are admissible under the exceptions to that rule which render admissible evidence of prior bad acts or crimes  for the purpose of showing "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).*

22. Accordingly, the court concludes that the evidence reflects that factors one, two, four, and six of <u>Dost</u> are satisfied by the evidence. The court finds that the depiction shown in Exhibit lA thus constitutes a lascivious exhibition of the genital or pubic area of the minor portrayed in the exhibit within the meaning of § 2251(a).

V. Conclusion - Judgment:

Based on defendant's conduct as shown by the above evidence,  the defendant was initially charged in the State courts  with violating Oklahoma's criminal "peeping Tom" statute. That charge was dismissed when the federal indictment was filed[3].   Although the court acknowledges that defendant's bizarre conduct here is far different from the profoundly unspeakable and destructive types of child pornography usually brought before this court under § 2251(a), it is nonetheless a form of exploitation of a  minor for the sexual arousal of defendant.   Thus, what was initially pursued as "peeping Tom" conduct falls within the broad spectrum of the federal  statute. Accordingly, the court finds that the government has satisfied its burden of proof beyond a reasonable doubt that defendant is guilty of the crime charged in the Indictment, 18 U. S. C. § 2251(a).

IT IS SO ORDERED this  7th  day of June, 2007.

RALPH G. THOMPSON
UNITED STATES DISTRICT JUDGE

---

[3]*Defendant's counsel so advised the court during trial, and the government did not challenge the accuracy of her statement.*

15